653 P.2d 522

**KINETICS, INC., Plaintiff-Appellant,**

v.

**EL PASO PRODUCTS COMPANY, Defendant-Appellee.**

No. 5559.

Court of Appeals of New Mexico.

Oct. 19, 1982.

## OPINION

LOPEZ, Judge.

The plaintiff, Kinetics, appeals the directed verdict granted against it. We affirm.

The issues for our decision are: 1. the authority of the trial court to order a directed verdict when the order was made subsequent to a jury deadlock and subsequent to twice denying such a motion; 2. the propriety of the directed verdict.

## FACTS

Kinetics, plaintiff, seeks money damages from El Paso Products, defendant, for supplying defective resins. Kinetics used the resins to manufacture filament-wound polyester pipe. Kinetics alleged in their amended complaint that El Paso Products was liable for the defective pipe produced by Kinetics because the pipe was defective due to the substandard resin obtained from El Paso Products or its agents.

Kinetics alleged that El Paso Products' liability was based on negligence, and breach of express and implied warranties.

The plaintiff's amended complaint was filed on July 7, 1978 against the following defendants: Al Albarian, individually and d/b/a Dawn Enterprises and Dawn Industries, Robinson and Lamey, a partnership, and El Paso Products Co. It alleged that El Paso Products was liable for money damages and that defendant's liability arose vicariously through the acts of Al Albarian, individually and doing business as Dawn Enterprises and Dawn Industries; and Robinson and Lamey, a partnership. Kinetics asserted that El Paso Products' vicarious liability arose because Al Albarian, Dawn Enterprises, Dawn Industries, and Robinson and Lamey were agents, servants, employees, wholly owned subsidiaries, or the alter ego, of El Paso Products. The record shows that at the time of the resin sales El Paso Products Company wholly owned the El Paso California Company, Inc. The El Paso California Company participated in a partnership, pursuant to written agreement, with Dwain Morse. The partnership name was El Paso Morse of California, and it operated under the name of Robinson and Lamey. Robinson and Lamey sold resin that was supplied to it by Al Albarian. Dwain Morse and El Paso Morse of California were not joined in this action and all defendants but El Paso Products were dismissed with prejudice by the trial court upon motion of Kinetics.

The case was tried to a twelve person jury. Plaintiff's witnesses testified that defendant's resin was the cause of their harm and this is shown by looking to when the resin was bought, when it was used, what projects the finished product was probably used on, and when complaints about the pipe were received. At the conclusion of

plaintiff's case-in-chief defendant moved for a directed verdict.

In support of the motion defendant alleged that: (1) plaintiff failed to establish that El Paso Products Company was vicariously liable for the conduct of El Paso California Company, Robinson and Lamey, or for Al Albarian; (2) plaintiff did not establish a *prima facie* case of negligence because they failed to show a standard of care, a duty owed to the plaintiff, breach of the duty, or causation.

The court denied defendant's motion, stating that plaintiff had proved "negligence and breach of warranty; and that, further, they have proved loss or injury."

At the conclusion of the evidence the case was submitted to the jury by special interrogatories. The jury found that Al Albarian was an agent of Robinson and Lamey and that El Paso California was a "mere instrumentality" of El Paso Products Company. The jury also advised the court that it was deadlocked six to six on the liability issue. The court then advised counsel it would not declare a mistrial, and, upon defendant's renewed motion, directed a verdict for the defendant.

AUTHORITY OF THE TRIAL COURT TO ACT ON A MOTION FOR A DIRECTED VERDICT.

The plaintiff argues that the court erred in directing a verdict for the defendant because there was conflicting evidence which should have been resolved by a jury. The plaintiff further argues that a directed verdict based upon the dismissal with prejudice of all the parties, including Robinson and Lamey, does not inure to the benefit of the defendant because Robinson and Lamey was merely a trade name.

Defendant moved for a directed verdict three times during the trial. The first motion was made at the close of plaintiff's case-in-chief. The motion was renewed at the close of all evidence, and was made again when the jury failed to reach a verdict on the liability issue. The motion was made pursuant to Rule 50 of the New Mexico Rules of Civil Procedure. Rule 50(b) provides, in pertinent part, as follows:

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, *the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.* Not later than ten days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict.

N.M.R.Civ.P. 50(b), N.M.S.A.1978 (1980 Repl.Pamph.) (Emphasis added).

The rule indicates that any ruling on a motion for a directed verdict by the trial court which was not granted, is subject to reconsideration of the legal issues raised by the motion. This portion of New Mexico's rule is an adaptation of Rule 50(b) of the Federal Rules of Civil Procedure. Cases construing Federal Rule 50(b) show that the reason for the wording is that at common law courts were required to expressly reserve questions of law arising during jury trials, and to take jury verdicts subject to the ultimate ruling on the questions reserved. *See Baltimore & C. Line v. Redman*, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). The effect of the wording is that now trial courts can rule on a motion for a directed verdict when the motion is made, and yet the court can, without express reservation, reexamine its ruling in a subsequent motion for a directed verdict or for a judgment *non obstante veredicto.* This is the position that courts which have considered this issue have adopted.

In *Hill v. W.E. Brittain, Inc.,* 405 S.W.2d 803 (Tex.Civ.App.1966), an automobile wrongful death case was tried to a jury. Defendants were operators of an overtaking and an overtaken truck. The overtaking truck struck and killed plaintiff's decedent. The driver of the overtaken truck

moved for a directed verdict (an "instructed verdict" in Texas) at the close of plaintiff's case, and the close of all evidence. That order was later changed to a judgment *non obstante veredicto*. On appeal, the court in *Hill* addressed the trial court's authority to grant the subsequent motion as follows:

It has been frequently held that where the defendant is entitled to an instructed verdict which is overruled, and thereafter the case is submitted to a jury which fails to agree on a verdict, the Court is authorized to enter judgment for the defendant if the defendant's motion for an instructed verdict should have been sustained.

405 S.W.2d at 808 (citations omitted).

In another Texas case, *Hutchinson v. East Texas Oil Co.*, 167 S.W.2d 205 (Tex. Civ.App.1942) (writ err. ref.), the court stated that when a jury is unable to reach a verdict, and there has been a previously denied motion for a directed verdict, the following rules applies:

[I]t was clearly the court's prerogative to set aside the attempted * * * [verdict] and render its own decree in appellee's favor, if its conclusion that an instructed verdict should have been ordered, in the first instance, was sound.

167 S.W.2d at 206–07 (citations omitted).

Federal courts also have accepted the view that a directed verdict is appropriate after jury deadlock. In *Thompson v. Lillehei*, 164 F.Supp. 716, 719 (D.Minn.1958), *aff'd* 273 F.2d 376 (8th Cir.1959), the court stated that "[t]he Court has the power to enter judgment for the defendants notwithstanding the inability of the jury to agree, if there is an absence of any substantial evidence to prove liability and damages."

■ Based upon the authorities which we have reviewed, we conclude that the trial court had authority to act on the motion for directed verdict at the time that it did.

## PROPRIETY OF THE DIRECTED VERDICT.

The plaintiff challenges the propriety of the directed verdict both on the evidence of negligence, breach of contract and warranty, and on the dismissal of the parties.

We must first examine the guidelines for appellate review of a motion for a directed verdict.

In *American Employers' Insurance Co. v. Crawford*, 87 N.M. 375, 533 P.2d 1203 (1975), the Supreme Court addressed the trial judge's duties upon being presented with a motion for a directed verdict. The court stated as follows:

It is the province of the trial court to determine all questions of law, including the legal sufficiency of any asserted claim or defense. If the evidence fails to present or support an issue essential to the legal sufficiency of an asserted claim, the right to jury trial disappears. (Citations omitted). It is fundamental that the evidence adduced must support all issues of fact essential to the maintenance of a legally recognized and enforceable claim. Otherwise, there can be no basis in fact for the claim, and it must be dismissed as a matter of law.

87 N.M. at 376, 533 P.2d 1203.

Moreover, the Court has stated that when reasonable minds cannot differ, a directed verdict is not only proper, but the court has a duty to enter such an order. *See Owen v. Burn Const. Co.*, 90 N.M. 297, 302, 563 P.2d 91, 96 (1977); *Gildersleeve v. Atkinson*, 6 N.M. 250, 265, 27 P. 477, 481 (1891).

The standard to be used when examining the propriety of a directed verdict is as follows:

"In ruling on a motion for a directed verdict, the trial court must view the evidence, together with all reasonable inferences deducible therefrom, in the light most favorable to the party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.) " * * *.

"The appellate court, upon reviewing a judgment entered pursuant to a directed verdict, must also view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the

party resisting the motion, and must disregard all conflicts in the evidence unfavorable to the position of that party. (Citations omitted.)"

*Skyhook Corp. v. Jasper,* 90 N.M. 143, 146, 560 P.2d 934, 937 (1977) (quoting *Archuleta v. Pina,* 86 N.M. 94, 95, 519 P.2d 1175, 1176 (1974)).

Plaintiff's amended complaint was against Al Albarian, d/b/a Dawn Enterprises and Dawn Industries; against Robinson and Lamey, a partnership; and against El Paso Products Company. All defendants were dismissed with prejudice with the exception of El Paso Products Co. The record shows that El Paso Products Co. formed a corporation by the name of El Paso California Corporation in which it owned all the stock. Then El Paso California Co. formed a partnership with Dwain Morse to do business as El Paso Morse of California. El Paso Morse of California did business as Robinson and Lamey. The plaintiff argues that the dismissal of Robinson and Lamey was not a dismissal of El Paso Morse of California, nor of El Paso California Co., nor of El Paso Products Co. Plaintiff takes this position arguing that Robinson and Lamey was merely a trade name, and that dismissal of the trade name had no legal effect on the partnership. We disagree with plaintiff's analysis of Robinson and Lamey's status in the case. We quote certain portions of the instructions to the jury which were not objected to by the plaintiff and which we think are pertinent to our opinion.

Paragraph A of Instruction No. 2 states: "Plaintiff claims that it sustained damages from economic and commercial injuries while utilizing a resin supplied by a partnership by the name of Robinson & Lamey". Instruction No. 9 states as follows:

In order for you to determine that El Paso Products Company is liable to Plaintiff for any damages on any of Plaintiff's theories, you must first determine that the partnership of El Paso Morse of California, d/b/a Robinson & Lamey, was either negligent or breached a warranty to Plaintiff. You must then further determine that El Paso California Company, a partner in Robinson & Lamey, was the "mere instrumentality" of El Paso Products Company.

Normally, the corporate entity will be respected and a court cannot go behind the corporate entity to impose liability personally on a parent corporation or on shareholders. However, if you find each of the following, El Paso Products Company may be vicariously liable for the debts or wrongdoings of its subsidiary El Paso California Company, by reason of its status as a partner in Robinson & Lamey:

(1) That the subsidiary was influenced or governed by the parent; and

(2) There is such unity of interest of ownership that one is inseparable from the other; and

(3) Adherence to the fiction of separate entities would sanction a fraud or promote injustice.

By answer to a special interrogatory the jury found that El Paso California Company was a mere instrumentality of the defendant, and that Al Albarian was the agent of Robinson and Lamey. The essential elements stated in an instruction on a statement of the issues, not objected to by plaintiff, are binding in this appeal. Throughout the course of this suit the names El Paso Morse of California and Robinson and Lamey have been used as synonyms. For example, Morse testified that Robinson and Lamey is the same as Morse of California. We therefore conclude that Robinson and Lamey is the same as El Paso Morse of California, of which El Paso California Company was a partner.

The question before us is whether the release of Robinson and Lamey, by way of a dismissal with prejudice by the trial court, inures to the benefit of El Paso California Company and ultimately to the defendant. We believe that § 54–1–13, N.M.S.A.1978, will shed some light on our conclusion. Section 54–1–13 provides as follows:

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership

or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

In *Loucks v. Albuquerque National Bank,* 76 N.M. 735, 418 P.2d 191 (1966), the Supreme Court recognized a partnership as a distinct legal entity to the extent that it may sue or be sued in the partnership name and that the partnership is distinct from the individual partners.

In *Pedersen v. Manitowoc Company,* 25 N.Y.2d 412, 306 N.Y.S.2d 903, 255 N.E.2d 146 (1969), the New York Court of Appeals stated that "[w]hen a tort is committed by the firm, *the wrong is imputable* to all of the partners jointly and severally, and an action may be brought against all or any of them in their individual capacities (citations omitted) or against the partnership as an entity." 25 N.Y.2d at 419, 306 N.Y.S.2d 903, 255 N.E.2d 146 (emphasis added). The New York Court's authority is their version of the Uniform Partnership Act. Their act is not materially different from New Mexico's version. *See* § 54–1–15, N.M.S.A.1978.

In *Pedersen* the New York Court of Appeals held that liability is imputed from the partnership to the partners when the partnership, and not the partners, is sued. It is undisputed that the liability of El Paso Products Co., if any, is a vicarious liability. Robinson and Lamey sold the resin to plaintiff. Therefore, the complete chain of vicarious liability is that Robinson and Lamey's wrong would have to be imputed from the partnership to the partner, El Paso California, and then imputed to the parent corporation, El Paso Products (the defendant).

■ The definition of vicarious liability is indirect legal responsibility. Black's Law Dictionary 1404 (5th ed. 1979). In *Dessauer v. Memorial General Hospital,* 96 N.M. 92, 628 P.2d 337 (Ct.App.1981), the following definition of vicarious liability is provided:

> Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which

it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another.

96 N.M. at 108, 628 P.2d 337 (Sutin, J., concurring) (citing *Nadeau v. Melin,* 260 Minn. 369, 110 N.W.2d 29, 34 (1961)).

In *Harrison v. Lucero,* 86 N.M. 581, 525 P.2d 941 (Ct.App.1974), plaintiff was injured by defendant's agent. Plaintiff settled with, and released, the agent. Defendant, as principal, raised the agent's release as a defense to vicarious liability. This court dispensed of the issue as follows:

> Since under * * * [the doctrine of respondeat superior] "* * * [t]he liability of the master to a third person for injuries by a servant in the course of his employment and within the scope of his authority, is derivative and secondary, while that of the servant is primary, and absent any delict of the master other than through the servant, exoneration of the servant removes the foundation upon which to impute negligence to the master."

86 N.M. at 584, 525 P.2d 941 (citing *Jacobson v. Parrill,* 186 Kan. 467, 351 P.2d 194 (1960)).

■ While factual distinctions can be drawn, we find the reasoning of *Harrison* persuasive. In the case at bar, primary liability was that of some or all of the released parties. El Paso Products did not deal directly with Kinetics. Rather, Kinetics sued the partnership, Robinson and Lamey, for the acts and omissions of the partnership. Therefore, liability of the partners must be vicarious; that is, imputed from the partnership. *Pedersen, supra.* Because the partnership was released, the means by which liability was imputed to the partners was destroyed. Accordingly, we conclude that the dismissal of Robinson and Lamey also released the partner, El Paso California, from any liability.

■ The jury found that El Paso California was the alter ego, or mere instrumental-

ity, of El Paso Products. By application of the same law and reasoning expressed above, we conclude that since El Paso California cannot have liability imputed to it, it follows, by virtue of the release, that liability cannot be imputed to El Paso Products. We also conclude that the dismissal of Al Albarian inures to the benefit of the defendant.

■ The plaintiff also states that under the Uniform Contribution Among Tortfeasors Act, § 41–3–8 N.M.S.A.1978 (1982 Repl.Pamph.), there was no way that the defendant could be released. We do not agree. In the case at bar, the liability of El Paso Products was, if at all, vicarious. Because the respondeat superior form of vicarious liability is imposed upon one party through a legal fiction, the parties are not joint tortfeasors. *See, e.g., Simpson v. Townsley,* 283 F.2d 743 (10th Cir.1960). If the parties are not joint tortfeasors, it is elementary that the Uniform Contribution Among Tortfeasors Act does not apply. *Craven v. Lawson,* 534 S.W.2d 653 (Tenn. 1976) (Uniform Act did not apply when liability was imputed through agency relationship).

Therefore, we conclude that there is no evidence or inferences deducible from which reasonable men could differ that Robinson and Lamey was the same as El Paso Morse of California, and that the release of Robinson and Lamey released the partner, El Paso California, the instrumentality of El Paso Products Co. The release of El Paso California released El Paso Products Co. The trial court correctly directed a verdict in favor of El Paso Products Co.

Since we have disposed of this appeal on the issue of the release, we will not discuss the point which relates to a directed verdict based on negligence.

The judgment of the trial court is affirmed. The appellate costs shall be paid by the appellant.

IT IS SO ORDERED.

WOOD and SUTIN, JJ., concur.