Issam M. SALIBA, Plaintiff,

v.

EXXON CORPORATION,
et al., Defendants.

Civ. A. No. 90–107–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 3, 1994.

Raphael E. Ferris, Rider, Thomas, Cleaveland, Ferris & Eakin, P.C., Roanoke, VA, for plaintiff.

Robert F. Brooks, Lawrence J. Bracken II, Cheryl G. Ragsdale, Barbara O. Bruckman, Hunton & Williams, Richmond, VA, for defendants.

## MEMORANDUM OPINION

TURK, District Judge.

This matter is before the court on defendants' motions for summary judgment and plaintiff's cross-motion for summary judgment as to the release issue pursuant to Federal Rule of Civil Procedure 56.

Upon careful consideration of the record, the applicable law, the briefs submitted by the parties, and the arguments presented by counsel at the hearing, the court finds that defendants' motions for summary judgment must be granted.

## I. *BACKGROUND*

In 1982, Hunt Oil Company ("Hunt") began exploration for oil in the Marib area of Yemen, pursuant to a production sharing agreement ("Marib PSA") with the Yemen Arab Republic ("Government"). Hunt subsequently transferred rights in the Marib PSA to Yemen Hunt Oil Company ("Yemen Hunt"), a wholly owned subsidiary of Hunt.

In the fall of 1985, Hunt began negotiations with Exxon Corporation ("Exxon") regarding a potential partnership in Yemen. As a result of these discussions, Exxon Yemen, Inc. ("Exxon Yemen") was incorporated for the purpose of conducting all petroleum operations related to the Marib PSA. Yemen Hunt sold a forty-nine per cent interest in the Marib PSA to Exxon Yemen, and they formed a Texas general partnership, known as Yemen Exploration and Production Company ("Partnership").

Hunt hired plaintiff Issam Saliba in January, 1985, to serve as in-house counsel for its Marib oil operations in Yemen. In connection with his employment, Saliba entered into a confidentiality agreement with Hunt. The agreement provided, among other things, that Saliba would keep proprietary information confidential and that, for a two year period after the termination of his employment with Hunt, he would avoid economic interests and activities contrary to Hunt's interests in Yemen.

Hunt fired Saliba in February, 1987. In December, 1987, the Yemen minister of oil retained Saliba and his firm, Burnham, Connoly, Osterle & Henry ("Burnham, Connoly") for the purpose, among other things, of advising the Government on matters related to the Partnership's Yemen operations. The Government hired him pursuant to an agreement whereby he was to work for three months at $12,000 per month. The agreement did not provide for any employment beyond the three months.

Saliba contacted Hunt on two separate occasions in 1987 in regard to his termination. On March 15, Saliba wrote Hunt regarding

the "improper termination." On November 19, Saliba wrote Hunt regarding "settlement or arbitration of improper termination claims." In response to the November 19 communication, Hunt filed a declaratory judgment action in Texas state court ("Texas litigation") on December 16, 1987 to determine the rights of Hunt and Saliba following the termination.

When Hunt subsequently learned of Saliba's representation of the Government, it objected to the representation and informed the Government of Saliba's claims against Hunt and of the pending lawsuit. Hunt and Yemen Hunt later met with Saliba and Burnham, Connoly representatives in an attempt to resolve the potential conflict of interest issues to no avail. Hunt then sued Burnham, Connoly in United States District Court for the Eastern District of Michigan ("Michigan litigation"), seeking an injunction against Burnham, Connoly's representation of the Government. On January 26, 1988, the court enjoined Burnham, Connoly from representing the Government. Two days later, Saliba left Burnham, Connoly and started practice as a sole practitioner with the Government as his client.

On February 29, 1988, Hunt amended its complaint in the Texas litigation to include a claim for breach of confidentiality. During February and March, 1988, Saliba advised the Government. The government did not renew his employment agreement upon its expiration at the end of the three month period. In May, 1988, Saliba counterclaimed against Hunt in the Texas litigation for improper termination, tortious interference, and antitrust violations.

In February, 1990, Saliba sued Exxon in federal court for tortious interference, statutory conspiracy, and antitrust violations. Saliba later amended his complaint to name Exxon Yemen as a defendant, again claiming tortious interference, statutory conspiracy, and antitrust violations.[1] On May 4, 1990, Saliba and Hunt settled the Texas litigation. The resulting settlement agreement provided, among other things, for a release of the partnership.

## II. ANALYSIS

■ Jurisdiction of the court is proper pursuant to 28 U.S.C. § 1332.[2] In a diversity action, the court must apply the substantive law of the forum state. *Sokolowski v. Flanzer,* 769 F.2d 975, 977 (4th Cir.1985). Therefore, the court will apply the substantive law of Virginia, including Virginia's conflict of law rules.

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper where "there is no genuine issue as to any material fact." In this case, the defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). If the defendant carries this burden, "[t]he burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

Moreover, "[o]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 874–75 (4th Cir.1992). Although admissibility of the evidence at trial is unnecessary, " '[u]nsupported speculation is not sufficient to defeat a summary judgment motion.' " *Id.* (quoting *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)).

### A. Effect of the Release

■ Exxon Yemen has moved for summary judgment on the grounds that, as a matter of law, the settlement agreement aris-

---

1. The court dismissed the antitrust counts by order dated June 3, 1994.

2. Since Saliba's federal antitrust counts have been dismissed, the court's subject matter jurisdiction over the remaining state law counts is based on diversity or ancillary jurisdiction.

ing out of the Texas litigation released Exxon Yemen. The legal issue is whether the release of a partnership from liability for certain claims effectively releases its individual general partners from those claims. As the court resolves this issue affirmatively, the court finds that it must grant Exxon Yemen's motion for summary judgment as to the release.

As a threshold matter, the court must apply Texas law in interpreting the legal effect of the settlement agreement. The settlement agreement provides that Texas law governs the parties' rights under the agreement.[3] Under Virginia conflict of law principles, "where the parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, [the courts] will recognize and enforce it, applying the law of the stipulated jurisdiction." *Paul Business Sys., Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804, 807 (1990). *See also Freelander, Inc. v. NCNB Nat'l Bank,* 706 F.Supp. 1211, 1212 (E.D.Va.1988) (holding that "[t]he law of Virginia governs the validity of the release ... since the release stipulates that Virginia law will apply"), *aff'd,* 921 F.2d 272 (4th Cir.1990).

The basic release language in the settlement agreement reads as follows:

Upon entry of a Final Judgment of the Court dismissing the Action, Plaintiff fully releases and discharges Defendant and each Released Party from any and all claims, debts, liabilities, demands, guarantees, costs, expenses, attorneys' fees, damages, actions and causes of action of whatever kind or nature, whether known or unknown, based upon, arising out of, or related to either the employment of Defendant by Plaintiff or the Action or both.

Settlement Agreement para. 6. Recital paragraph (e), incorporated into the settlement agreement, defined "Released Parties" to include "Yemen Exploration & Production Company (a partnership)." The agreement

provided that it was the parties' intent that "each of the Released Parties shall be entitled to all of the benefits of this Settlement Agreement," Recital para. (e), and that the agreement contained "the entire agreement between the Parties relative to the settlement of the Action." Settlement Agreement para. 23.

Saliba's claims against Hunt in the Texas Litigation were effectively identical to the claims he has raised against Exxon and Exxon Yemen in the present case. In both actions, Saliba alleged antitrust violations, statutory conspiracy, and tortious interference arising out of actions by the Partnership and its partners. Both cases relate to the chain of events beginning with Hunt's termination of Saliba and ending in the Government's failure to renew Saliba's employment agreement. Thus, the court finds that if the release relieved Exxon Yemen from liability in the Texas Litigation, then it also acts to relieve Exxon Yemen from liability to that extent in the present litigation.

All that remains is the question whether the release of the partnership released Exxon Yemen. The parties agree that under both Texas law and the settlement agreement itself, the court cannot use parol evidence to construe the intent of the signatories. Apparently, there are no Texas cases directly on point. The Texas Uniform Partnership Act governs Exxon Yemen's liability as a general partner. Tex.Rev.Civ.Stat.Ann. art. 6132b (Vernon Supp.1994). In a recent case, the Court of Appeals of Texas held that a "take-nothing" summary judgment rendered in favor of a limited partnership extinguished plaintiff's claims against its general partners. *Shaw v. Kennedy, Ltd.,* 879 S.W.2d 240, 247 (Tex.Ct.App.1994) (citing *Hammonds v. Holmes,* 559 S.W.2d 345, 347 (Tex.1977) and noting that the allegations against the partners were derivative of the liability pursued against the partnership and that plaintiff made no allegations of individual liability). Various other Texas cases sup-

---

**3.** The choice of law provision, in relevant part, states:

This Settlement Agreement ... and the rights, remedies or obligations provided for thereunder, shall be construed and enforced in accor-

dance with the laws of the State of Texas, as those laws are applied by Texas courts to agreements between Texas residents entered into and to be performed entirely within Texas. Settlement Agreement para. 16.

port the general proposition that the interests of the partnership and its partners are identical. *See Hammonds,* 559 S.W.2d at 347 (barring partners from bringing subsequent suit against defendant where the partnership's suit against the same defendant was dismissed with prejudice); *Corsicana Ready Mix v. Trinity Metroplex Div.,* 559 S.W.2d 423 (Tex.Civ.App.1977) (holding that "the answers of all individual partners is equivalent to an answer for the partnership").

In *Kinetics, Inc. v. El Paso Prods., Co.,* 99 N.M. 22, 653 P.2d 522 (Ct.App.1982), the Court of Appeals of New Mexico addressed the precise issue of the effect of the release of a partnership on the vicarious liability of its partners under New Mexico's uniform partnership act. N.M.Stat.Ann. §§ 54–1–1 *et seq.* (Michie 1978). In that case, the suit in which the partnership was released from liability was for acts and omissions of the partnership:

> Therefore, liability of the partners must be vicarious; that is, imputed from the partnership. Because the partnership was released, the means by which liability was imputed to the partners was destroyed. Accordingly, we conclude that the dismissal of [the partnership] also released the partner . . . from any liability.

*Id.* 653 P.2d at 527. Based on the reasoning of the Texas courts in the cases cited above, the court concludes that *Kinetics* correctly states the rule that would obtain under Texas partnership law.

The rationale of all of the cases above supports the result the court reaches today. Here, the Partnership consisted of two general partners, Yemen Hunt and Exxon Yemen. The identity of interests of the partners and the partnership was almost absolute. The joint and several liability applicable to partners for acts or omissions of the partnership cuts both ways; just as Exxon Yemen would have been vicariously liable for torts undertaken within the scope of partnership affairs, so too does the release of the partnership from such torts absolve the partners from derivative liability.

The court holds, therefore, that the release of the partnership from liability for any claims arising from or relating to the claims in the Texas litigation releases Exxon Yemen from all liability to the same extent as the partnership. Since the claims alleged in the present suit concern issues identical to those raised in the Texas litigation, the court finds summary judgment in favor of Exxon Yemen appropriate. Moreover, since Exxon's liability hinges on Exxon Yemen's liability, the court grants summary judgment in favor of Exxon as well.

Plaintiff contends that even if Exxon Yemen is not vicariously liable for partnership acts, the court should deny summary judgment based on the alleged individual liability of Exxon and Exxon Yemen. The court finds no merit in plaintiff's argument. As discussed in further detail below, plaintiff has not provided one jot of evidence supporting his claim for direct liability. Thus, as to direct liability, plaintiff simply has not made a showing sufficient to defeat Exxon Yemen's summary judgment motion.

### B. *Tortious Interference and Statutory Conspiracy*

 Even if the settlement agreement did not act to release Exxon Yemen, the court must nevertheless grant defendants' motion for summary judgment on plaintiff's claims for tortious interference and statutory conspiracy. Under Virginia law, the elements of tortious interference with a contract or business expectation are:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97, 102 (1985). Under the undisputed facts, plaintiff has failed to make out a prima facie showing of the tort.

 First, there is no evidence of a valid contractual relationship or business expectancy with which defendants could have interfered. The contract entered into be-

tween the Government and Saliba provided only for employment for three months. Saliba worked for the three month period, and the Government compensated him the full $36,000 for it. There is no evidence as to why the contract was not "renewed," nor is there even any evidence of discussions between Saliba and the Government about continuing the relationship beyond the three months. Any further relationship with the Government was terminable at will, or prospective, at best. Where the nature of the relationship is one of at-will employment, "the cause of action for interference with contractual rights provides no protection from mere intentional interference...." *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 836 (1987). Rather, the plaintiff "must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *'improper methods.'* " *Id.* (emphasis original) (quoting *Hechler Chevrolet, Inc. v. General Motors Corp.,* 230 Va. 396, 337 S.E.2d 744, 748 (1985)). Improper methods generally include activities such as "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Duggin,* 360 S.E.2d at 836. In addition, violation of established standards of a trade or profession, unethical conduct, or "[s]harp dealing, overreaching, or unfair competition" can constitute improper methods under certain circumstances. *Id.* at 837.

It is undisputed that neither Exxon nor Exxon Yemen took affirmative acts which led to the termination of Saliba's relationship with the Government. Indeed, Exxon Yemen refrained from participating in the meeting at which Yemen Hunt raised its concerns about Saliba's representation of the Government in matters relating to the Marib PSA.[4] Even if the court imputes the undisputed actions of Yemen Hunt, Exxon Yemen's partner, to Exxon and Exxon Yemen, those actions, as a matter of law, do not constitute tortious interference.

 Saliba represented Hunt and Yemen Hunt for approximately two years regarding its Marib oil operations in Yemen. During that time, Saliba was privy to information deemed sensitive enough that Hunt required him to enter into a confidentiality agreement. The agreement provided, among other things, that Saliba would keep proprietary information confidential and that, for a two year period after the termination of his employment with Hunt, he would avoid economic interests and activities contrary to Hunt's interests in Yemen. The court need not decide whether Saliba actually breached the confidentiality agreement or whether, as defendants contend, his representation of Hunt violated the D.C.Code of Professional Responsibility. The court merely finds that given the circumstances, Yemen Hunt's articulation to the Government of its displeasure with Saliba's representation of the Government on matters related to his prior employment with Hunt does not constitute "improper methods" as defined by the caselaw.

 Even if Saliba had met his burden of showing intentional interference and improper methods, Yemen Hunt's objection to Saliba's representation of the Government was justified, or privileged. Justification is an "affirmative defense for which the burden of proof rests upon a defendant." *Duggin,* 360 S.E.2d at 838. Specific grounds for the defense include " 'legitimate business competition, financial interest, responsibility for the welfare of another, directing business policy, and the giving of requested advice.' " *Id.* (quoting *Chaves,* 335 S.E.2d at 103). In this case, financial interests of Exxon Yemen and Yemen Hunt clearly justified their actions. A $600 million partnership interest is nothing if not substantial. Whatever Saliba's intentions, his actions in accepting representation

---

4. Plaintiff vehemently argues that the notes of Loy Harris, president of Exxon Yemen, regarding this meeting create a genuine issue of material fact sufficient to meet his burden on summary judgment. The court disagrees. The virtually illegible notes state:

Feb. 19, 1988—Pre-meeting MTG in Sana'a (1) Hunt: If Saliba present, want private session w/ Minister LHH: not block, but not participate.

The court finds that no reasonable jury could infer from those notes either intentional interference or improper methods.

of the Government on matters related to his representation of Hunt clearly threatened the Partnership's financial interest in approaching the bargaining table on an "even playing field." Even if Saliba's representation of the Government would not have resulted ultimately in any financial harm to the Partnership, the mere fact that the representation "smelled bad" to the Partnership justified Exxon Yemen and Yemen Hunt to the extent their actions may have interfered with Saliba's representation of the government.

■ Nor has Saliba met his burden with respect to his claim of statutory conspiracy. Under the Virginia Code,

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever ... shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2–500.

Va.Code Ann. § 18.2–499(A) (Michie Repl. 1988). To recover in such an action, plaintiff must prove "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 318 S.E.2d 592, 596 (1984).

■ As a preliminary matter, plaintiff has not shown the requisite combination of two or more persons. The caselaw suggests that a single entity cannot conspire with itself. *Fox v. Deese*, 234 Va. 412, 362 S.E.2d 699, 708 (1987) (holding that if defendants were working within the scope of their employment for the city, then effectively only one entity exists). Thus, a corporation cannot conspire with its wholly owned subsidiary. *Bowman v. State Bank*, 229 Va. 534, 331 S.E.2d 797, 801 (1985); *In re Ray Dobbins Lincoln–Mercury, Inc.*, 604 F.Supp. 203, 205 (W.D.Va.1984). The court finds that to the extent Saliba alleges a conspiracy between Exxon and Exxon Yemen, he has not made out a prima facie case of conspiracy. Similarly, the court cannot find a conspiracy to the extent Saliba alleges a conspiracy be-

tween Exxon Yemen and Yemen Hunt. Where the alleged co-conspirators are the two general partners in a partnership, acting within the scope of partnership affairs, only one entity exists—the Partnership.

Even if the court were to find the combination requirement satisfied, plaintiff has presented no evidence from which a reasonable jury could infer that either Yemen Hunt or Exxon Yemen acted for the purpose of willfully and maliciously injuring Saliba in his business. As discussed above, it is speculative whether Saliba sustained damages resulting from the alleged actions. Saliba urges the court that he has presented a genuine issue of fact as to malice. The court disagrees. The voluminous exhibits and affidavits before the court are simply devoid of any facts suggesting malice.

Saliba cites Loy Harris's testimony in his deposition that the defendants did not have any specific concern about plaintiff's representation of the Government, that plaintiff's representation of the Government was not a major issue that was going to paralyze the LPG arrangements, and that this matter was not important enough to make it impossible to conclude successfully the negotiations with Saliba there. He contends that a reasonable jury could infer from this testimony that his decision not to interfere with Yemen Hunt's objection to Saliba's representation of the Government was motivated by sufficient malice to satisfy the statute.

Saliba points also to the fact that the minutes of a meeting between representatives of Yemen Hunt and the Government omits in the final version a portion of a sentence included in the draft version. Thus, the final version of the minutes deleted the emphasized portion of the following sentence in the draft version: "At 11:15 a.m. Mr. Olson and Mr. Nicholas requested and received a private audience with Minister Mohanny *to protest the use of Mr. Saliba as counsel for Government during the LPG.*" Saliba's argument is that a jury could infer from the modification that the defendants knew their actions were malicious. It appears that Saliba has strained to find evidence of malice where none exists. The "evidence" he has

mustered amounts to speculation which is insufficient to survive disposition on summary judgment.

Finally, the conduct at issue "must be directly aimed toward damaging the business, trade, reputation or profession: The injury must not be the result or secondary effect of an action taken for mere personal gain." *Nationwide Mut. Fire Ins. Co. v. Jones,* 577 F.Supp. 968, 970 (W.D.Va.1984). As discussed above, Exxon, Exxon Yemen, and Yemen Hunt acted in the interest of preserving a substantial financial interest. Saliba has not shown that the conduct at issue was anything more than a by-product of actions taken for personal gain.

### III. *CONCLUSION*

For the foregoing reasons, the court **GRANTS** defendants' motions for summary judgment, and **DENIES** plaintiff's cross-motion for summary judgment on the issue of release. An appropriate order consistent with this memorandum opinion shall be entered this day.