This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39088**

**KATHLEEN M.V. OAKEY, Personal Representative of the Estate of Tawana Lucero, Deceased,**

Plaintiff-Appellant,

v.

**DOCTOR ON CALL, LLC; DOCTOR ON CALL 2, LLC; DOCTOR ON CALL 3, LLC; DOCTOR ON CALL 4, LLC; DOCTOR ON CALL, P.C.; JOHN VIGIL, M.D.; JOHN TYSON, M.D.; and MAY MAPLE PHARMACY, INC.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Court Judge**

Fine Law Firm
Mark Fine
Albuquerque, NM

Fuqua Law & Policy, P.C.
Scott Fuqua
Santa Fe, NM

for Appellant

Law Offices of Mary T. Torres
Mary T. Torres
Albuquerque, NM

Conklin, Woodcock & Ziegler, P.C.
Christa M. Hazlett
Kathy L. Black

Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ATTREP, Chief Judge.**

**{1}**     Plaintiff Kathleen Oakey, personal representative of the estate of Tawana Lucero (the Estate), brought claims against the "Doctor on Call" business entities[1] and John Vigil, MD (collectively, Doctor on Call), as well as a prescribing physician and a pharmacy, alleging that Ms. Lucero's death was caused by excess medication prescribed by a physician employed by Doctor on Call. The Estate appeals the district court's final judgment in favor of Doctor on Call. We affirm.

**DISCUSSION**

**{2}**     The Estate challenges: (1) the exclusion of an expert witness as a sanction for discovery violations; and (2) the grant of summary judgment on its claims for negligence per se, medical malpractice, negligent supervision, and vicarious liability. "[W]e review sanctions imposed by the trial court for discovery violations and violations of court orders for an abuse of discretion," *see Sanchez v. Borrego*, 2004-NMCA-033, ¶ 10, 135 N.M. 192, 86 P.3d 617, and the grant of summary judgment de novo, *see Lea Cnty. State Bank v. Markum Ranch P'ship*, 2015-NMCA-026, ¶ 9, 344 P.3d 1089. The Estate, as the appellant, bears the burden of persuading us that the district court erred. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that a trial court's actions are presumed to be correct and that an appellant "must affirmatively demonstrate" the trial court erred). We address the Estate's claims of error in turn.

**I.     The District Court Did Not Abuse Its Discretion in Excluding the Estate's Expert Witness as a Sanction**

**{3}**     On Doctor on Call's motion, the district court excluded one of the Estate's experts for its failure to timely disclose discovery related to the expert. Based on the exclusion of the expert, the district court eventually granted summary judgment on the Estate's medical malpractice and negligent supervision claims for failure of proof. The Estate contends that, because Doctor on Call suffered little prejudice from the late disclosure, the sanction was disproportionate to the offense and, because the exclusion of the expert "operated to terminate [the] medical malpractice and negligent supervision claims in their entirety," the district court was required to find at least willful misconduct and explore less drastic alternative sanctions. The Estate additionally contends that the district court improperly "siloed" its other expert's testimony that was offered to fill the

---

1The entities are Doctor on Call, LLC; Doctor on Call 2, LLC; Doctor on Call 3, LLC; Doctor on Call 4, LLC; Doctor on Call, P.C.

gap left by the excluded expert. We discern no abuse of discretion in the district court's expert witness rulings.

**{4}** The district court's rulings were occasioned by the Estate's failure to comply with an amended scheduling order extending certain pretrial deadlines (the Scheduling Order). The Scheduling Order came more than three years after the complaint was filed, after the Estate experienced multiple changes and disruptions in representation, after the first deadline to identify experts was extended and the second deadline expired, and after Doctor on Call filed a motion for summary judgment based on the Estate's lack of an expert witness. New counsel then requested another extension of deadlines, which the district court partially granted, because, as the Estate acknowledged at the hearing on its request, "No expert, no case." The district court extended the deadline for the Estate's expert witness disclosure and further required the Estate to "provide any discovery supplementation regarding experts at the same time as the disclosure." On the deadline, the Estate filed a disclosure identifying an expert who would testify regarding the prescribing physician's actions and another expert who would testify as to Doctor on Call's. But the Estate did not supplement discovery related to the Doctor of Call expert until a few weeks later (four days before the expert's deposition)—and only after Doctor on Call filed a motion to strike the experts.

**{5}** The district court granted the motion in part, striking the Estate's Doctor on Call expert, as a sanction for the Estate's failure to comply with the Scheduling Order. The court also denied the Estate's motion to supplement the disclosure of its remaining expert to include opinions about Doctor on Call. The district court judge observed that the extension to give the Estate "the opportunity" to have experts was "trampled" by its late supplementation of discovery responses in violation of the Scheduling Order. The district court concluded that the Estate's production of hundreds of pages of documents very close in time to the expert's deposition—even if some portion of those documents had been previously produced or the Estate believed them to be of little relevance—prejudiced Doctor on Call's ability to prepare to question the expert. The court additionally concluded that the Estate offered no justification for its subsequent attempt to expand its other expert's disclosure to include topics the excluded expert would have addressed. Given this context, we cannot say that the district court's exclusion of the Doctor on Call expert and denial of the Estate's motion to supplement the disclosure of the remaining expert was disproportionate to the Estate's failure to comply with the Scheduling Order, *see Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 16, 129 N.M. 586, 11 P.3d 550 (affirming a discovery sanction when the sanction was "proportional to the offenses"), or was otherwise "without logic or reason, or clearly unable to be defended," *see Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 30, 120 N.M. 151, 899 P.2d 594 (omission, internal quotation marks, and citation omitted).

**{6}** Nor does the ultimate consequence of the sanction—entry of summary judgment on the Estate's medical malpractice and negligent supervision claims for lack of an expert—require a different result. A district court "may only impose the sanction of dismissal for failure to comply with a court order when the failure to comply is due to the willfulness, bad faith or fault of the disobedient party," *Gonzales*, 1995-NMSC-047, ¶

31 (emphasis, internal quotation marks, and citation omitted), and "meaningful alternatives must be reasonably explored before the sanction of dismissal is granted," *id.* ¶ 33 (internal quotation marks and citation omitted). *Cf. Freeman v. Fairchild*, 2018-NMSC-023, ¶ 20, 416 P.3d 264 (providing that when a sanction results in dismissal, courts must consider "(1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant" (internal quotation marks and citation omitted)). Assuming that the sanction in this case is tantamount to dismissal—despite the more than three-year lapse in time between the sanction and entry of summary judgment—the record supports a determination that the failure to comply was willful and interfered with the judicial process, and that the district court explored meaningful alternatives.

{7}     Our Supreme Court has explained that "willfulness is a conscious or intentional failure to comply[,] . . . is distinguished from accidental or involuntary non-compliance[,] and may be established even where there is no wrongful intent." *Gonzales*, 1995-NMSC-047, ¶ 31 (internal quotation marks and citation omitted). The Estate makes no argument that its conduct was accidental or involuntary. Instead, the Estate characterizes its lack of compliance with the Scheduling Order as a "regrettable failure" and admits that counsel "undisputedly made . . . mistakes" that resulted in its failure to comply with the order. The failure at issue here was thus "conscious" and, as the district court noted, contrary to an explicit requirement set forth in an order that was designed to give the Estate an otherwise unavailable opportunity to obtain an expert. In failing to comply, the Estate disregarded the duties imposed by the Scheduling Order and further disrupted already-delayed proceedings. *See id.* (permitting the sanction of dismissal when the failure to comply is the "fault of the disobedient party" (internal quotation marks and citation omitted)).

{8}     In addition, the district court considered alternatives to exclusion. At the hearing on Doctor on Call's motion to strike the Estate's experts, the Estate suggested that Doctor on Call be permitted to make additional discovery requests of the expert, which the district court characterized as "a remedy that is not a remedy" because it "enure[d] to [the Estate's] benefit" at that point. The district court also rejected Doctor on Call's request to exclude both of the Estate's experts, limiting the sanction to the single expert for whom there was a late document production. Further, the district court noted that had it "been able to find a way to fashion something less than the ultimate penalty, fees would have been on the table, but this is the ultimate penalty, so fees are denied." The Estate identifies no particular alternative sanctions that it contends the district court should have considered, and in light of the record, we are satisfied that the court "reasonably explored" meaningful alternative sanctions. *See id.* ¶ 33.

{9}     We therefore conclude that the district court did not abuse its discretion in excluding the Estate's Doctor on Call expert witness or in refusing to permit the expansion of the remaining expert's testimony beyond the Estate's original disclosure.

## II.      Summary Judgment on the Estate's Claims Was Proper

**{10}** Next, we address the district court's grant of summary judgment on the Estate's claims for negligence per se, medical malpractice, negligent supervision, and vicarious liability.

## A.      Negligence Per Se

**{11}** Doctor on Call moved for summary judgment on the Estate's negligence per se claim, arguing that the regulation identified by the Estate applies to physicians and physician assistants, not to an entity like Doctor on Call, or, alternatively, that the regulation was insufficiently specific to establish a standard of care. The district court granted the motion on the latter ground. Because we conclude the regulation in question does not apply to Doctor on Call, we affirm the district court, but on different grounds. *See Freeman*, 2018-NMSC-023, ¶ 30 ("Under the right for any reason doctrine, an appellate court may affirm a district court ruling on a ground not relied upon by the district court if (1) reliance on the new ground would not be unfair to the appellant, and (2) there is substantial evidence to support the ground on which the appellate court relies." (alterations, internal quotation marks, and citation omitted)).

**{12}** To establish a claim for negligence per se, the Estate was required to demonstrate that the regulation in question "prescribes certain actions or defines a standard or conduct, either explicitly or implicitly." *Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 7, 143 N.M. 657, 180 P.3d 664 (internal quotation marks and citation omitted); *see also Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 45, 134 N.M. 77, 73 P.3d 215 ("Legislatively authorized rules and regulations have the force of law, and the violation of a properly adopted and filed rule or regulation is negligence per se." (alteration, internal quotation marks, and citation omitted)). The Estate argues that the negligence per se arose from the violation of 16.10.14.8(B) NMAC (4/3/2005), a regulation promulgated pursuant to the Medical Practice Act, NMSA 1978, §§ 61-6-1 to -34 (1989, as amended through 2023). *See* 16.10.14.3 NMAC (4/3/2005) ("These rules are promulgated pursuant to and in accordance with the Medical Practice Act."). The regulations are used by the New Mexico Medical Board to determine "whether a physician's or physician assistant's prescriptive practices are consistent with the appropriate treatment of pain." 16.10.14.8 NMAC (4/3/2005); *see also* 16.10.14.1 NMAC (4/3/2005) (defining "board"). We conclude that Doctor on Call was not subject to these regulations and, consequently, any violation of them could not sufficiently prescribe Doctor on Call's actions or define its standard of conduct to establish negligence per se. *See Heath*, 2008-NMSC-017, ¶ 7.

**{13}** The Medical Practice Act relates to the oversight of health care practitioners, including physicians and physician assistants. *See* § 61-6-1(B), (C) (describing the Act's purpose as "to protect the public from the improper, unprofessional, incompetent and unlawful practice of medicine," which is effectuated by, among other things, issuing "licenses to qualified health care practitioners, including physicians, physician assistants and anesthesiologist assistants"). The applicable regulations in turn apply to "all physicians and physician assistants licensed by the board," 16.10.14.2 NMAC (4/3/2005), and refer to "practitioners" throughout, *see, e.g.*, 16.10.14.8(B)(1)-(5) NMAC

(4/3/2005). Thus, the regulations relied on by the Estate apply on their face to practitioners, such as physicians and physician assistants, not corporate entities, like Doctor on Call.

**{14}**   The Estate nevertheless contends its negligence per se claim is viable. First, the Estate maintains that whether 16.10.14.8(B) NMAC (4/3/2005) applies to Doctor on Call is essentially immaterial—arguing that "the elements of negligence per se focus on who the regulations are designed to protect and not on whose conduct the regulations are designed to control." This argument disregards that a claim for negligence per se has four prongs. *See Heath*, 2008-NMSC-017, ¶ 7 (applying a four-part test to determine whether a negligence per se instruction is appropriate: "(1) [t]here must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the [L]egislature through the statute sought to prevent" (internal quotation marks and citation omitted)). The Estate's argument implicates two of the prongs—that the plaintiff is in the class of persons the statute is meant to protect and that the harm is of the type the Legislature intended to prevent. *See id.* The Estate's argument, however, ignores another prong—that the defendant violated a standard of conduct that is prescribed by the statute or regulation in question. *See id.* If the statute or regulation does not prescribe the conduct of the particular defendant, the elements of negligence per se have not been satisfied. *See id.*; *Apodaca*, 2003-NMCA-085, ¶ 43 (concluding that the first two prongs of the negligence per se test are not met where the regulation in question was not applicable to the alleged wrongdoer). Such is the case here regarding Doctor on Call.

**{15}**   Next, the Estate maintains that 16.10.14.8(B) NMAC (4/3/2005) is in fact applicable to Doctor on Call—arguing that the regulations "are directed to 'practitioners'" and that "New Mexico defines health care 'practitioners' . . . to include entities," presumably like Doctor on Call. In support, the Estate cites authorities construing the Medical Malpractice Act, NMSA 1978, §§ 41-5-1 to -29 (1976, as amended through 2023). While the Medical Malpractice Act and its construing authorities use the term "health care provider," *see, e.g., M.D.R. v. State ex rel. Human Services Dep't*, 1992-NMCA-082, ¶ 6, 114 N.M. 187, 836 P.2d 106, the regulation in question relates to the Medical Practice Act, not the Medical Malpractice Act. And as discussed, the Medical Practice Act applies to "health care *practitioners*," not "health care *providers*." The Estate's authorities thus are unpersuasive in the context of the Medical Practice Act. In the present case, the Estate does not argue, nor does the evidence demonstrate, that Doctor on Call is a "practitioner," as that term is used in the Medical Practice Act or 16.10.14.8(B) NMAC (4/3/2005).

**{16}**   We therefore affirm the district court's grant of summary judgment on the Estate's negligence per se claim.

## B.      Medical Malpractice and Negligent Supervision

**{17}** The district court granted summary judgment on the Estate's medical malpractice and negligent supervision claims on the ground that these claims required expert testimony and, given the exclusion of Doctor on Call's expert, the Estate had none. The Estate principally argues that its claims for medical malpractice and negligent supervision against Doctor on Call did not require expert testimony beyond that given by its remaining expert, who would have testified as to the prescribing physician's standard of care, breach, and causation.[2] Instead, the Estate argues, the jury could determine without expert assistance whether Doctor on Call "operated their medical business" in breach of the standard of care, knowingly supervised an "opioid pill mill," and knowingly or negligently allowed a physician "to commit malpractice." Specifically, the Estate contends that the jury could rely on (1) Doctor on Call's failure to comply with the requirements in 16.10.14.8(B) NMAC (4/3/2005) and (2) their common knowledge.

**{18}** As to the Estate's first point, because, as just discussed, 16.10.14.8(B) NMAC (4/3/2005) does not apply to Doctor on Call by its terms, we are not persuaded that the jury could simply utilize that regulation as the standard of care in this case, absent an expert tying the licensing requirements for practitioners in that regulation to Doctor on Call's duty of care as an entity or supervisor.[3] *See Oakey, Est. of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 27, 399 P.3d 939 (providing that "statutes, regulations, and/or court rules [that] *apply to the conduct of a professional* . . . should be considered in determining whether the professional fulfilled the duty imposed by the common law" (emphasis added)).

**{19}** As to the Estate's second point, we likewise are not persuaded that a juror's common knowledge would assist them in determining what a medical entity or supervisor must appropriately do to meet the standard of care in relation to prescriptions written by employee physicians. *See Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 22, 326 P.3d 50 ("If the act involves the use of specialized knowledge or

---

2The Estate additionally makes a threshold contention that the procedures employed by the district court in granting summary judgment on its negligent supervision claim—i.e., permitting supplemental argument and surreplies—are "reason enough to reverse" the ruling. The thrust of the Estate's contention appears to be that Doctor on Call never requested, nor made a prima facie case for, summary judgment on the negligent supervision claim in its original motion and only developed these arguments in subsequent pleadings. We initially question the accuracy of the Estate's contentions in that the original motion requested summary judgment on "all remaining claims," presumably encompassing negligent supervision, on the basis that the Estate lacked needed expert testimony. Regardless, the Estate's argument disregards that the district court permitted supplemental briefing to allow the Estate an opportunity to address the district court's questions about whether the claims could survive without expert testimony. Because the procedures granted the Estate an opportunity to offer argument to address the district court's concerns, we see no basis for reversal as the Estate suggests. Lastly, to the extent the Estate claims in its reply brief that summary judgment was impermissible under Rule 1-056(F) NMRA, this claim of error comes too late. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 ("[W]e do not consider arguments raised in a reply brief for the first time.").

3The Estate suggests that Doctor on Call itself committed medical malpractice as a "co-prescriber" because its name also was on Ms. Lucero's prescriptions and, as a result, it was a "practitioner" for purposes of the regulation. Because the Estate provides no authority to support its theory that an entity becomes a "practitioner" simply by having its name on a prescription, we do not consider this argument further. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (rejecting arguments on the basis that they were unaccompanied by citation to legal authority).

skill to make a judgment call as to the appropriate thing to do or not do, expert testimony will likely be needed to assess the resultant act or failure to act."). The district court provided a reasoned explanation, supported by citation to legal authority, why expert testimony was needed to prove the Estate's claims against Doctor on Call. The Estate baldly attacks the district court's ruling as "unsupported" and otherwise cites authority unhelpful to its contention that expert testimony was not needed to prove its claims.

**{20}** For instance, the Estate cites *Richter* for the general principle that "expert testimony will not be required if the asserted negligence is based on a standard of reasonable care [that] does not require professional interpretation." *Id.* ¶ 28. *Richter*, however, does not shed light on whether the particular circumstances of this case would require "professional interpretation." *See id.* ¶¶ 26-29 (determining whether expert testimony was required to prove the plaintiff's claims involving the delivery of laboratory reports by reviewing case law with analogous factual circumstances); *see also id.* ¶ 24 (providing that whether a claim can be proven without expert testimony is a fact-dependent inquiry). The Estate's reliance on the uniform jury instruction for negligent supervision, UJI 13-1647 NMRA, likewise is not helpful. The Estate suggests the instruction's third element—that "[the defendant] failed to use ordinary care in . . . supervising . . . [the employee]," UJI 13-1647(3)—means that an expert is never needed to establish the standard of care for this type of claim. This Court in *Grassie v. Roswell Hospital Corp.*, 2011-NMCA-024, 150 N.M. 283, 258 P.3d 1075, considered an argument similar to the Estate's—that the text of the relevant uniform jury instruction can be relied on to establish the type of evidence needed to prove the claim. *See id.* ¶¶ 69-71. In rejecting this argument, *Grassie* held that expert testimony may or may not be required, "depending on the circumstances of a particular case," and that "[t]he essence of the claim must inform the inquiry as to the applicable standard of care." *Id.* ¶ 71. Applying *Grassie*, we conclude that UJI 14-1647(3) does not alone inform our decision about whether an expert is needed to prove the Estate's claims.

**{21}** Put simply, in the absence of persuasive authority to support its argument that no expert was needed to prove its medical malpractice and negligent supervision claims against Doctor on Call, the Estate has not convinced us that the district court erred in granting summary judgment on these claims. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

## C. Vicarious Liability

**{22}** The Estate also challenges the district court's grant of summary judgment on its claim for vicarious liability, which sought to hold Doctor on Call liable, under a respondeat superior theory, based on the negligence of the prescribing physician. Doctor on Call, on appeal and in the district court, argued that the Estate's settlement with the prescribing physician foreclosed any further claim for vicarious liability based on respondeat superior against Doctor on Call. The district court agreed and granted summary judgment on this claim. On appeal, the Estate maintains that the doctrine of "release the agent, release the principal" does not apply because the prescribing

physician and Doctor on Call were joint tortfeasors, or, alternatively, other theories of vicarious liability, apart from respondeat superior, apply.

**{23}**    In support of its grant of summary judgment on the Estate's vicarious liability claim, the district court cited *Valdez v. R-Way, LLC*, 2010-NMCA-068, 148 N.M. 477, 237 P.3d 1289. *Valdez* held that the plaintiff's release of the employee from all claims of liability also released the employer from all claims of vicarious liability, because the "employer's liability [arose] only by virtue of the doctrine of respondeat superior, and not through any independent negligence of the employer." *Id.* ¶ 1. Under the reasoning in *Valdez*, any respondeat superior-based claim of liability against Doctor on Call dissipated once the Estate agreed to release the prescribing physician from liability on all claims. *See id.*; *see generally Oakey, Est. of Lucero v. Tyson*, 2017-NMCA-078, ¶¶ 1, 3, 404 P.3d 810 (recognizing, in an earlier appeal in this case, that the district court entered an order dismissing all claims against the prescribing physician with prejudice pursuant to a settlement agreement). That is, the Estate effectively "exonerate[ed]" the prescribing physician, and in so doing, "remove[d] the foundation upon which to impute negligence to the employer," Doctor on Call. *See Valdez*, 2010-NMCA-068, ¶ 4 (alterations, internal quotation marks, and citation omitted).

**{24}**    Nevertheless, the Estate argues that *Valdez* excluded from its "release the agent, release the principal" doctrine claims against joint tortfeasors who, "through their own independent conduct," caused harm. We do not disagree with this principle, *see id.* ¶ 1, but it is of no assistance to the Estate. The district court acknowledged this principle by limiting its ruling to the Estate's claim for vicarious liability based on respondeat superior and preserving (at the time) the Estate's claims for direct liability against Doctor on Call based on Doctor on Call's own negligence. Thus, the only claim dismissed based on the Estate's settlement with the prescribing physician was its claim for respondeat superior—the joint tortfeasor, or direct liability, claims were not dismissed.

**{25}**    The other bases for vicarious liability asserted by the Estate include the "specific safeguards" doctrine and the "peculiar risk" doctrine. As the Estate notes, however, these doctrines apply to independent contractors. *See Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 18, 105 N.M. 575, 734 P.3d 1258 (specific safeguards); *Moulder v. Brown*, 1982-NMCA-078, ¶ 12, 98 N.M. 71, 644 P.2d 1060 (peculiar risk). The Estate makes no claim, and cites no evidence, that the prescribing physician was an independent contractor. Nor does the Estate cite any supportive authority for its contention that these doctrines should be applied under the facts of this case. *See ITT Educ. Servs., Inc. v. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (providing that, where a party cites no authority for a proposition, the party's argument will not be considered on appeal).

**{26}**    All considered, the Estate has not convinced us that the grant of summary judgment on its vicarious liability claim was error.

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm.

**{28}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**